IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROLL CALL, INC.,<br>50 F Street, N.W., Suite 700<br>Washington, D.C. 20001,<br><br>      Plaintiff,<br><br>v.<br><br>ROLL CALL STRATEGIES, LLC,<br>514 Capitol Avenue<br>Frankfort, Kentucky 40601,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT

### INTRODUCTION

1. This is a straightforward trademark infringement and breach of contract action. Plaintiff Roll Call, Inc. ("Roll Call") has for over 50 years been the publisher of the well-known newspaper *Roll Call – The Newspaper of Capitol Hill*. Roll Call owns three federally-registered trademarks that incorporate the Roll Call name, including the marks ROLL CALL, ROLL CALL (and Design), and ROLL CALL THE NEWSPAPER OF CAPITOL HILL (and Design).

2. By virtue of Roll Call's long-term, exclusive use of the ROLL CALL marks, those marks have become associated exclusively with Roll Call and its high quality newspaper reporting services.

3. *Roll Call – The Newspaper of Capitol Hill* is an impartial newspaper that neutrally reports about politics, politicians, and political campaigns. It does not advocate for any particular position on any issue and is not affiliated with any individuals or entities that do so. Roll Call's marks have become associated with Roll Call's neutrality, objectivity, and

impartiality in reporting the news of Capitol Hill and politics. In order to maintain that hard-won reputation, it is critical that the ROLL CALL name and mark not be associated in any way with or mistaken for individuals or entities that conduct their business operations in a manner that would undermine Roll Call's reputation, including lobbying on behalf of clients concerning political issues.

4. Defendant Roll Call Strategies, LLC ("Roll Call Strategies") is a lobbying firm founded in 2005. It has recently registered to lobby Congress on behalf of a growing list of clients concerning a wide range of political issues under the name and mark ROLL CALL STRATEGIES. Its use of the name and mark ROLL CALL STRATEGIES infringes upon Roll Call's ROLL CALL marks.

5. On information and belief, when selecting the name and mark for its new company, the founders of Roll Call Strategies – who knew of Roll Call's marks and the company's reputation – chose a name that would have immediate credibility in political circles. But in order to achieve such name recognition and credibility, Roll Call Strategies has intentionally violated Roll Call's rights and attempted to create consumer confusion so the public will believe either that Roll Call Strategies is affiliated with Roll Call or that Roll Call has authorized the work that Roll Call Strategies is performing.

6. Shortly after Roll Call realized that Roll Call Strategies existed and was infringing its marks, counsel for Roll Call demanded that Roll Call Strategies cease all use of the ROLL CALL trademarks. As a result, on November 29, 2005, Roll Call Strategies, through its counsel, agreed to stop using the ROLL CALL STRATEGIES mark and change its name and mark to CR STRATEGIES, LLC, and to do so "without delay." See Declaration of Adam M. Chud ("Chud Decl.") ¶ 8, and Exhibit C thereto. Three weeks later, however, on December 20, 2005, Roll Call

Strategies attempted to renege on the parties' agreement and declared in a letter that it would not make that agreed-to change. See Chud Decl. ¶ 10, and Exhibit F thereto. As of this date, defendant continues to operate under the name and mark ROLL CALL STRATEGIES and remains registered to lobby Congress using that name and mark.

7. Plaintiff therefore brings this action for violations of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114 and 1125, and the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3904, *et seq.*, and for breach of contract, and seeks preliminary and permanent injunctive relief to stop Roll Call Strategies from infringing on Roll Call's federally-registered ROLL CALL trademarks. Roll Call also seeks monetary damages as well as an award of appropriate punitive damages, attorneys' fees, and costs as a result of Roll Call Strategies' intentional and wrongful conduct.

## THE PARTIES

8. Plaintiff Roll Call is a Delaware corporation with its principal place of business in the District of Columbia.

9. Defendant Roll Call Strategies is a Kentucky corporation with its principal place of business at 514 Capitol Avenue, Frankfort, Kentucky 40601.

## JURISDICTION AND VENUE

10. This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); violation of the DCCPPA, D.C. Code § 28-3904, *et seq.*; and breach of contract. This Court has subject matter jurisdiction over the Lanham Act claims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331, 1332 and 1338(a). This Court has supplemental jurisdiction over Roll Call's state law and common law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

11.  Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events that give rise to this action occurred in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

12.  Roll Call has for over fifty years published *Roll Call – The Newspaper of Capitol Hill*, a newspaper that impartially reports on the legislative and political activities of Congress, members of Congress, and their campaigns. It has long served as the unofficial newspaper of Capitol Hill.

13.  *Roll Call – The Newspaper of Capitol Hill* has a nationwide subscriber base for both its print and on-line editions. It has approximately 18,000 subscribers, including over 14,000 in the District of Columbia alone. The office of every member of the House and Senate receives at least one copy of *Roll Call – The Newspaper of Capitol Hill*. There are also subscribers to the print or on-line editions of the newspaper in every state of the union.

14.  Roll Call has devoted substantial resources promoting the ROLL CALL name and mark. In the last year alone, it has spent over $250,000 marketing the ROLL CALL name and mark, including through direct mail and other forms of advertising.

15.  Roll Call's revenues for the fiscal year ending March 31, 2006 will be approximately $19 million.

16.  A recent survey confirms the widespread recognition of the ROLL CALL newspaper in political circles. The 2004-2005 Erdos & Morgan Opinion Leaders survey found that 54.4% of Congressional Opinion Leaders (defined as key elected and appointed officials in federal, state, and local government and in the private sector) are regular readers of *Roll Call – The Newspaper of Capitol Hill* (3 or 4 times per week), and 79.7% rely on it for political information. According to that survey, readership of the ROLL CALL newspaper exceeds that of any other Capitol Hill publication.

17. In 1993, the U.S. Patent & Trademark Office ("PTO") registered three trademarks owned by Roll Call that incorporate the Roll Call name: ROLL CALL (Registration No. 1790391), ROLL CALL (and Design) (Registration No. 1791611), and ROLL CALL THE NEWSPAPER OF CAPITOL HILL (and Design) (Registration No. 1791614). Each mark covers the following goods and services: a "twice weekly newspaper reporting on the legislative and political activities of Congress, members of Congress and their campaigns, congressional employees, and other matters of interest to people who work or live on Capitol Hill."[1] Chud Decl. ¶ 11, and Exhibit G thereto.

18. Each of these marks has become incontestable pursuant to 15 U.S.C. § 1065.

19. In contrast with Roll Call's long history of using the ROLL CALL name and marks in connection with its newspaper, Roll Call Strategies has begun operating only recently. On February 18, 2005, Roll Call Strategies registered to do business with the Secretary of State of Kentucky. See Chud Decl. ¶ 13, and Exhibit I thereto. It was founded by Jeffrey Speaks, a former aide to U.S. Representative Hal Rogers of Kentucky's 5th District, and John McCarthy, the former head of the Kentucky Republican Party. See Chud Decl. ¶ 14, and Exhibit J thereto.

20. Roll Call Strategies has registered with the U.S. Congress to lobby in the District of Columbia using the name and mark ROLL CALL STRATEGIES. It is currently registered to lobby on behalf of seven clients on a wide variety of issues: NPC, Inc. for "Treasury, [Department of Homeland Security], and Commerce, Justice, State Appropriations"; Hagan Properties for "Federal permit for transportation right of way"; Churchill Downs, Inc. for "Tax issues"; Larue County for "Transportation," "Commerce, Justice, State," and "Labor, HHS"; Larue County Industrial Foundation for "Transportation," "Commerce, Justice, State," and

---

[1] *Roll Call – The Newspaper of Capitol Hill* is now published four times per week.

"Labor, HHS"; City of Hodgenville for "Transportation," "Commerce, Justice, State," and "Labor, HHS"; and Morehead State University on unspecified issues. See Chud Decl. ¶ 12, and Exhibit H thereto (lobbying registrations).

21. Roll Call first learned that Roll Call Strategies existed, and that it had registered to lobby Congress, in October 2005.

22. On October 17, 2005, Roll Call, through counsel, sent Roll Call Strategies a letter demanding that it cease and desist using the ROLL CALL name and marks because that use constituted trademark infringement and trademark dilution in violation of 15 U.S.C. §§ 1114 and 1125. See Chud Decl. ¶ 2, and Exhibit A thereto. The letter gave Roll Call Strategies until October 31, 2005 to confirm that it would discontinue its use of the name and mark ROLL CALL STRATEGIES, or Roll Call would seek to enforce its legal remedies. Roll Call Strategies ignored the letter.

23. On November 2, 2005, counsel for Roll Call called to speak with Mr. Speaks at Roll Call Strategies and was told to contact counsel for Roll Call Strategies, Lisa Conrad. Chud Decl. ¶ 3. Counsel for Roll Call left Ms. Conrad messages on her cell phone and at her office that day, which messages she did not return. *Id.*

24. Counsel for Roll Call left Ms. Conrad another message at her office on November 4, 2005, which she returned that day. Chud Decl. ¶ 4. At that time, she proposed that Roll Call Strategies would change its name and mark to RC GOVERNMENT RELATIONS for its lobbying in the District of Columbia, but continue to use the name and mark ROLL CALL STRATEGIES everywhere else. *Id.* at ¶ 4.

25. On November 11, 2005, counsel for Roll Call rejected Roll Call Strategies' offer, because operating under the name and mark ROLL CALL STRATEGIES nationwide would

- 6 -

continue to infringe upon the ROLL CALL marks, and because the use of the name and mark RC GOVERNMENT RELATIONS was a transparent attempt to use an abbreviation for ROLL CALL that would continue to infringe upon the ROLL CALL marks. See Chud Decl. ¶ 5, and Exhibit B thereto.

26. On November 15, 2005, Roll Call Strategies, through counsel, proposed that it would change its name and mark to either ROLL CALL VOTE STRATEGIES or RC GOVERNMENT RELATIONS for its work in all jurisdictions. Chud Decl. at ¶ 6. On November 22, Roll Call rejected those offers for the same reasons that it rejected the earlier proposal. *Id.* at ¶ 7.

27. Finally, on November 29, 2005, Roll Call Strategies agreed to change its name and mark for all purposes to CR STRATEGIES, LLC. Counsel for both sides reached that agreement in a telephone conversation that day. Chud Decl. ¶ 8. Counsel for Roll Call Strategies confirmed that agreement by letter the same day, which provided that:

> "This letter confirms our telephone conversation today that Roll Call Strategies, LLC will change its legal name to CR Strategies, LLC without delay. I will call you on Tuesday, December 13, to provide you an update as to the name change." Chud Decl. ¶ 8, and Exhibit C thereto.

Counsel for Roll Call Strategies sent a copy of the letter to Mr. McCarthy, one of Roll Call Strategies' founders, by facsimile. See *id.*

28. December 13 came and went with no word from counsel for Roll Call Strategies. Chud Decl. ¶ 9. On December 16, counsel for Roll Call sent an e-mail to Ms. Conrad and asked to discuss her clients' progress in changing its name. Chud Decl. ¶ 9, and Exhibit D thereto. She responded that the conference could take place on December 19. Chud Decl. ¶ 9, and Exhibit E thereto. That date also came and went with no word from Roll Call Strategies or its counsel. Chud Decl. at ¶ 9.

NOT USED

29.     On December 20, 2005, Ms. Conrad faxed a letter to counsel for Roll Call stating that Roll Call Strategies no longer agreed to change its name and mark to CR STRATEGIES, LLC, and claimed that she had misunderstood the advice that she had received from her client three weeks earlier. Chud Decl. ¶ 10, and Exhibit F thereto. The letter proposed that Roll Call Strategies would instead change its name and mark to KENTUCKY ROLL CALL STRATEGIES, LLC, and register to lobby Congress under the assumed name and mark KRCS. *Id.* Roll Call Strategies also offered to add a disclaimer to its "web site and promotional literature" stating that it was not affiliated with Roll Call. *Id.* That offer has not been accepted, and Roll Call Strategies continues to operate using the name and mark ROLL CALL STRATEGIES.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement – 15 U.S.C. § 1114)

30.     Roll Call incorporates by reference each and every allegation contained in paragraphs 1 through 29 above as if set forth here in full.

31.     Roll Call Strategies' acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

32.     Roll Call Strategies' acts are likely to cause confusion, mistake, and deception of the public who are likely to believe that Roll Call Strategies' lobbying and other activities are being conducted by Roll Call, or are somehow related to, connected to, or approved or sponsored by Roll Call, when in fact they are not.

33.     Roll Call Strategies' acts are being conducted with full knowledge of Roll Call's rights. Such acts therefore constitute willful infringement.

34.     Roll Call Strategies' acts have caused and will continue to cause irreparable harm and injury to Roll Call.

35. Unless Roll Call Strategies is enjoined, Roll Call Strategies – whose lobbying business seeks to trade on Roll Call's goodwill and is inimical to Roll Call's reputation for impartiality – will continue its illegal actions and cause immeasurable damage to the goodwill and reputation of Roll Call and its ROLL CALL marks. It would be difficult or impossible to ascertain the amount of compensation by damages which could afford Roll Call adequate relief for such continuing acts. Therefore, Roll Call's remedy at law is not adequate to compensate it for the irreparable injury that has already been inflicted upon Roll Call and which will be inflicted upon it in the future by virtue of Roll Call Strategies' conduct.

36. In addition, as a result of Roll Call Strategies' improper acts, Roll Call has been damaged in an amount to be determined at trial, plus interest.

37. In addition to actual damages and Roll Call Strategies' profits derived from its improper acts, Roll Call is entitled to treble damages in an amount equal to three times the amount of actual damages or profits, whichever is greater, plus attorneys' fees and costs under 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
### (False Designation of Origin – 15 U.S.C. § 1125(a))

38. Roll Call incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as if set forth here in full.

39. Roll Call Strategies' acts constitute the use, in interstate commerce, of a word, term, name, symbol or device or combination thereof, or false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

40. Roll Call Strategies' acts were intentional, deliberate, willful, and done with full knowledge of Roll Call's rights.

41. Roll Call Strategies' acts have caused and will continue to cause irreparable harm and injury to Roll Call.

42. Unless Roll Call Strategies is enjoined, Roll Call Strategies – whose lobbying business seeks to trade on Roll Call's goodwill and is inimical to Roll Call's reputation for impartiality – will continue its illegal actions and cause immeasurable damage to the goodwill and reputation of Roll Call and its ROLL CALL marks. It would be difficult or impossible to ascertain the amount of compensation by damages which could afford Roll Call adequate relief for such continuing acts. Therefore, Roll Call's remedy at law is not adequate to compensate it for the irreparable injury that has already been inflicted upon Roll Call and which will be inflicted upon it in the future by virtue of Roll Call Strategies' conduct.

43. In addition, as a result of Roll Call Strategies' improper acts, Roll Call has been damaged in an amount to be determined at trial, plus interest.

44. In addition to actual damages and Roll Call Strategies' profits derived from its improper acts, Roll Call is entitled to treble damages in an amount equal to three times the amount of actual damages or profits, whichever is greater, plus attorneys' fees and costs under 15 U.S.C. § 1117(a).

### THIRD CLAIM FOR RELIEF
(Trademark Dilution – 15 U.S.C. § 1125(c))

45. Roll Call incorporates by reference each and every allegation contained in paragraphs 1 through 44 above as if set forth here in full.

46. The ROLL CALL marks are famous. They are inherently distinctive and intimately associated with Roll Call. The ROLL CALL marks have been used continuously for

many decades in connection with Roll Call's operations and, in particular, its newspaper, *Roll Call – The Newspaper of Capitol Hill*. The marks are used nationwide and have universal recognition among those who work in politics – the same audience to which defendant's business operations are directed. There are no similar marks being used by other third parties, other than defendant. The ROLL CALL marks are registered on the PTO's principal register and have become incontestable under 15 U.S.C. § 1065.

47. Roll Call Strategies' use in commerce of the name and mark ROLL CALL STRATEGIES began after the marks owned by Roll Call became famous and has caused and is causing the distinctive quality of the marks to be diluted.

48. Roll Call Strategies' acts were intentional, deliberate, willful, and done with full knowledge of Roll Call's rights.

49. Roll Call Strategies' acts have caused and will continue to cause irreparable harm and injury to Roll Call.

50. Unless Roll Call Strategies is enjoined, Roll Call Strategies – whose lobbying business seeks to trade on Roll Call's goodwill and is inimical to Roll Call's reputation for impartiality – will continue its illegal actions and cause immeasurable damage to the goodwill and reputation of Roll Call and its ROLL CALL marks. It would be difficult or impossible to ascertain the amount of compensation by damages which could afford Roll Call adequate relief for such continuing acts. Therefore, Roll Call's remedy at law is not adequate to compensate it for the irreparable injury that has already been inflicted upon Roll Call and which will be inflicted upon it in the future by virtue of Roll Call Strategies' conduct.

51. In addition, as a result of Roll Call Strategies' improper acts, Roll Call has been damaged in an amount to be determined at trial, plus interest.

52. In addition to actual damages and Roll Call Strategies' profits derived from its improper acts, Roll Call is entitled to treble damages in an amount equal to three times the amount of actual damages or profits, whichever is greater, plus attorneys' fees and costs under 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
(Unlawful Trade Practices – D.C. Code § 28-3904)

53. Roll Call incorporates by reference each and every allegation contained in paragraphs 1 through 52 above as if set forth here in full.

54. Roll Call Strategies' acts constitute unlawful, unfair, or fraudulent business acts or practices, and constitute actionable unlawful trade practices under D.C. Code § 28-3904.

55. Roll Call Strategies has failed to state a material fact, which failure tends to mislead, namely, that it is not affiliated in any way with Roll Call, in violation of D.C. Code § 28-3904(f).

56. Roll Call Strategies' acts were intentional, deliberate, willful, and done with full knowledge of Roll Call's rights.

57. Roll Call Strategies' acts have caused and will continue to cause irreparable harm and injury to Roll Call.

58. Roll Call Strategies' wrongful conduct has harmed the consuming public at large, including consumers in the District of Columbia.

59. Roll Call Strategies' acts have caused and will continue to cause irreparable harm and injury to Roll Call. Unless Roll Call Strategies is enjoined from further actions in violation of D.C. Code § 28-3904, Roll Call Strategies will continue its illegal acts and cause immeasurable damage to the goodwill and reputation of Roll Call and its ROLL CALL marks. It would be difficult to ascertain the amount of compensation by damages that could afford Roll

Call adequate relief for such continuing acts. Therefore, Roll Call's remedy at law is not adequate to compensate it for the irreparable injury that has already been inflicted upon it and that will be inflicted upon it in the future by virtue of Roll Call Strategies' conduct.

60.   As a result of Roll Call Strategies' improper acts, Roll Call is entitled to an award of treble damages, reasonable attorneys' fees, punitive damages, an injunction against the use of the unlawful trade practices, and any other relief that the Court deems proper, as provided by D.C. Code § 28-3905(k)(1).

### FIFTH CLAIM FOR RELIEF
(Breach of Contract)

61.   Roll Call incorporates by reference each and every allegation contained in Paragraphs 1 through 60 above as if set forth here in full.

62.   After learning that Roll Call Strategies was infringing on the ROLL CALL marks, counsel for Roll Call demanded that Roll Call Strategies cease and desist its use of those trademarks.

63.   That dispute was resolved on November 29, 2005 by an agreement between the parties providing that Roll Call Strategies would change its name and mark for all purposes to CR STRATEGIES, LLC, and that it would do so "without delay."

64.   Roll Call provided valuable consideration for the agreement, namely, in agreeing to refrain from bringing a trademark infringement lawsuit against Roll Call Strategies to vindicate its federally-protected rights. Roll Call in fact forewent bringing such an action for three weeks in reliance on that agreement.

65.   On December 20, 2005, Roll Call Strategies expressed its unequivocal intention that it would not honor the parties' agreement and would not change its name and mark for all purposes to CR STRATEGIES, LLC.

66. Roll Call Strategies has breached the parties' agreement to both change its name and mark to CR STRATEGIES, LLC, and to do so "without delay."

WHEREFORE, plaintiff Roll Call respectfully requests that this Court enter an Order that provides for the following relief against defendant Roll Call Strategies:

A. On its First Cause of Action, (i) a preliminary and permanent injunction enjoining defendant from any further acts constituting trademark infringement under 15 U.S.C. § 1114, (ii) actual damages and profits resulting from defendant's illegal acts, in an amount to be determined at trial, plus interest, (iii) treble damages, and (iv) attorneys' fees and costs;

B. On its Second Cause of Action, (i) a preliminary and permanent injunction enjoining defendant from any further acts in violation of 15 U.S.C. § 1125(a), (ii) actual damages and profits resulting from defendant's illegal acts, in an amount to be determined at trial, plus interest, (iii) treble damages, and (iv) attorneys' fees and costs;

C. On its Third Cause of Action, (i) a preliminary and permanent injunction enjoining defendant from any further acts in violation of 15 U.S.C. § 1125(c), (ii) actual damages and profits resulting from defendant's illegal acts, in an amount to be determined at trial, plus interest, (iii) treble damages, and (iv) attorneys' fees and costs;

D. On its Fourth Cause of Action, (i) a preliminary and permanent injunction enjoining defendant from any further acts in violation of D.C. Code § 28-3904, (ii) actual damages and profits resulting from defendant's illegal acts, in an amount to be determined at trial, plus interest, (iii) treble damages; (iv) punitive damages, and (v) attorneys' fees and costs;

E. On its Fifth Cause of Action, (i) a declaration that the parties' contract is valid and that defendant must change its name as the parties had agreed, and (ii) damages in an amount to be determined at trial, plus interest; and

F.  An award of such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Roll Call demands a trial by jury on all matters to which it is entitled by law.

Dated: January 12, 2006

> Respectfully submitted,
>
> _[signature]_
>
> John Moustakas (D.C. Bar No. 442076)
> Adam M. Chud (D.C. Bar No. 468443)
> Goodwin Procter LLP
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> Tel: (202) 346-4000
> Fax: (202) 346-4444
>
> *Attorneys for plaintiff Roll Call, Inc.*

12/01 '06 14:01 FAX 00 44 020 79303092    THE ECONOMIST GROUP                    ⌀002

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on January __12__, 2006.

_____
Laurie Battaglia Skinker

LIBW/1439285.1